UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**FOSTER-THOMPSON, LLC,**

    **Plaintiff,**

v.                                                         Case No.  8:04-cv-2128-T-30EAJ

**STEVEN THOMPSON,**

    **Defendant.**

_____/

## **ORDER**

THIS CAUSE comes before the Court upon Plaintiff's and Third-Party Counterclaim Plaintiff's (1) Rule 615 Motion to Exclude Fact Witnesses, Including Karl Cambronne, and (2) Motion to Disqualify Karl Cambronne From Serving as Trial Counsel for Steven Thompson, and Supporting Memorandum (Dkt. #107-1), Defendant and Third-Party Plaintiff's Memorandum in Opposition to the Motion of Foster-Thompson, LLC and JoAnn Q. Foster to Disqualify Karl Cambronne to Serve as Trial Counsel (Dkt. #111-1), Foster-Thompson, LLC, and Mrs. Foster's Reply in Support of Motion to Exclude Witnesses and Disqualify Karl Cambronne (Dkt. #119-1), and Defendant and Third Party Plaintiff's Thompson's Notice of Filing Affidavit of Karl Cambronne in Opposition to Motion to Disqualify (Dkt. #135-1).  The Court, having considered the motions, response, reply, affidavits, memorandums of law, arguments of counsel, and being otherwise fully advised finds that Plaintiff's motion should be granted.

**I.      Background.**

Plaintiff, Foster-Thompson, LLC, and Third-Party Counterclaim Plaintiff, JoAnn Foster (hereinafter together referred to as "Plaintiffs") argue that Mr. Cambronne will be a necessary fact witness at trial. Plaintiffs offer the following chronology of events as proof of Mr. Cambronne's involvement as Steven Thompson's agent in the transactions being litigated: (a) July 21, 2004 - Mr. Cambronne sent a letter to Mrs. Foster, stating in pertinent part, that Mr. Thompson was then engaged in "[E]fforts critical to the completion of the project . . . "[1]; (b) July 26 and 28, 2004 - Mr. Cambronne's assistant e-mailed letters on behalf of Mr. Thompson to various vendors and governmental officials dealing with Foster-Thompson, LLC[2] indicating that actions taken by Mrs. Foster were jeopardizing the ability of Foster-Thompson LLC to complete the Samawah project, a copy of Mr. Cambronne's July 21, 2004 letter was forwarded as an attachment to the emails; (c) July 30, 2004 - Mr. Cambronne sent a letter to the Coalition Provisional Authority (CPA) stating, in pertinent part, " . . . it is questionable at best whether the above-referenced contract can be performed . . . " and urging the CPA to " . . . suspend further payments of the contract insofar as it is doubtful that the contract will be performed as required . . . "[3]; (d) September 8, 2004 - Mr. Thompson told a third party in an email that "When I returned from the trip, my attorney

---

[1] Dkt. #107-1, Ex. 6.

[2] Dkt. #107-1, Ex. 9 and 10.

[3] Dkt. #107-1, Ex. 11.

advised me to notify all my vendors and tell them I was shutting down the project."[4]; (e) August 2, 2005 - Mr. Cambronne's deposition was taken regarding pre-litigation transactions and communications concerning the July 2004 actions and statements made by Steven Thompson and by Mr. Cambronne on behalf of Steven Thompson; and (f) on two separate occasions, October 3, 2004[5] and November 9, 2005[6], Mr. Cambronne was notified that he would be a material fact witness at trial.

Plaintiffs further argue that pursuant to Rule 4-3.7 of the Rules Regulating the Florida Bar Mr. Cambronne may not act as an advocate at a trial in which he is likely to be a necessary witness. Plaintiffs point out that the comment in Rule 4-3.7 recognizes that a problem with the trial lawyer testifying as a witness can arise "whether the lawyer is called as a witness on behalf of the client or is called by the opposing party." See Comment, Florida Rules of Professional Conduct. Plaintiffs assert that the combination of Mr. Cambronne's roles as advocate and witness will prejudice Plaintiffs' rights in this litigation and that there is evidence that Mr. Cambronne's testimony will conflict with that of Mr. Thompson's.

Additionally, Plaintiffs argue that if Mr. Cambronne is deemed to be a necessary witness at trial, then he should be excluded from hearing the testimony of other witnesses pursuant to Rule 615. Consequently, Plaintiffs acknowledge that if Mr. Cambronne is

---

[4] Dkt. #107-1, Ex. 5.

[5] Dkt. #107-1, Ex. 1.

[6] Dkt. #107-1, Ex. 2.

excluded from trial as a fact witness, then such exclusion will effectively disqualify him from serving as trial counsel for Steven Thompson.

In opposition, Defendant and Third Party Plaintiff, Steven Thompson (hereinafter referred to as "Defendant") argues that: (a) the July 21, 2004 and July 30, 2004 letters were written pre-suit and therefore should be excluded under Rule 408 as offers to compromise or settle; (b) if both letters are excluded under Rule 408, then any testimony regarding the letters must suffer a similar fate; (c) Florida courts consider the disqualification of a party's chosen counsel an extraordinary remedy and resort to that remedy only sparingly; (d) Cambronne is not an indispensable witness; (e) calling Cambronne as a witness would invade the attorney-client privilege; and (f) Plaintiffs misapply Rule 4-3.7, since Rule 4-3.7 only pertains to the situation where an attorney is disqualified when he seeks to act as both a witness and a lawyer for his client.

**II. Discussion.**

Rule 4-3.7 of the Florida Rules of Professional Conduct states:

**(a) When Lawyer May Testify.** A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness on behalf of the client except where:
    (1) the testimony relates to an uncontested issue;
    (2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;
    (3) the testimony relates to the nature and value of legal services rendered in the case; or
    (4) disqualification of the lawyer would work substantial hardship on the client.

Under the circumstances of this case, it appears that on several occasions Mr. Cambronne acted as Steven Thompson's agent in regard to the transactions being litigated by the parties. First Mr. Cambronne sent the July 21, 2004 letter to Mrs. Foster, stating in pertinent part, that "[E]fforts critical to the successful completion of the project are underway and anticipated." On page 10 and 11 of Mr. Cambronne's deposition, he seems reluctant to acknowledge whether at the time of making his July 21st statement on behalf of Mr. Thompson he was aware that Mr. Thompson was systematically informing vendors and contractors that he had ceased all engineering and overall project management, as evidenced in:

(i) an email sent by Steven Thompson to Rob Hoerauf on July 15, 2004 (Mr. Thompson states that he is going to "blow this thing up," cease "all project management and engineering on the project permanently," and that he was planning to notify the CPA that the "project kick off meeting with the civil contractor was scheduled to begin on July 18 has been cancelled permanently and that all engineering and project management on the project has ceased until further notice" and that "vendors have notified Foster-Thompson that they are cancelling equipment orders due to lack of payment.")[7];

(ii) an email sent by Steven Thompson to the Abdulsalam Said on July 18, 2004 (Mr. Thompson states that "As head of engineering and overall project management, I have also ceased all engineering and project management indefinitely.")[8];

---

[7] Dkt. #107-1, Ex. 4.

[8] Dkt. #107-1, Ex. 7.

(iii) an email sent by Steven Thompson to Mark Minniti on July 18, 2004 (Mr. Thompson states "I have ceased any further engineering on the project and instructed all files to be closed and sent to my attention.  I can't instruct you what to do but a suggestion would be to cancel what you can and when I return to the States late Monday evening we could talk on Tuesday and try to sort things out.")[9]; and

(iv) an email sent by Steven Thompson to Robert Apsley on July 18, 2004 (Mr. Thompson states "I have shut the project down" and "I have ceased any further engineering on the project and instructed all files to be closed and sent to my attention.")[10]

Consequently, it appears that Mr. Cambronne's July 21, 2004 statement that, "efforts critical to the successful completion of the project are underway and anticipated" directly conflicts with Mr. Thompson's actions and communications to third parties only a few days prior to July 21, 2004.  As a result, Mr. Thompson has placed Mr. Cambronne in the position to explain his statement where it appears to directly conflict with Mr. Thompson's concurrent representations to third parties.

Again, on September 8, 2004, in an email to a third party, Donald Berry, Mr. Thompson places Mr. Cambronne in the position to explain how "efforts critical to the successful completion of the project are underway and anticipated" when apparently upon

---

[9] Dkt. #107-1, Ex. 7.

[10] Dkt. #107-1, Ex. 7.

Mr. Thompson's return to the United States from a trip[11] Mr. Cambronne advised Mr. Thompson "to notify all of my vendors and tell them that I was shutting down the project." Also, in the September 8, 2004 letter, Mr. Thompson told Mr. Berry, "[M]y attorney instructed me to withhold everything I had done and up to that point, (sic) I had 95% of the material specified and ordered and a civil contractor hired and bids back on the mechanical." Clearly, Mr. Thompson's statements to Mr. Berry conflict with Mr. Cambronne's statements on July 21, 2004; furthermore, Mr. Thompson's statements present a potential waiver of attorney-client privilege as to Mr. Thompson's communications with Mr. Cambronne in relation to such issues.

Accordingly, this Court finds that Mr. Cambronne acted as Steven Thompson's agent in the transactions being litigated in this case. Also, it is apparent to this Court that Mr. Cambronne will most probably be called as a fact witness at trial to testify as to: what efforts, if any, critical to the successful completion of the project were underway or anticipated by Mr. Cambronne or Steven Thompson on July 21, 2004; how Mr. Cambronne reconciles his July 21, 2004 statement with Mr. Thompson's recent communications and actions to numerous vendors and/or third parties on or about July 15, 2004 through July 18, 2004; how Mr. Cambronne reconciles his July 21, 2004 statement with Mr. Thompson's communications and actions evidenced in Mr. Thompson's September 8, 2004 email to a third party in which Mr. Thompson claims "When I returned from my trip, my attorney

---

[11] The "trip" appears to be the same "trip" referenced by Mr. Thompson in his July 15, 2004 email to Rob Hoerauf in which Mr. Thompson also mentions returning from a trip on Monday, July 19, 2004.

advised me to notify all of my vendors and tell them that I was shutting down the project."; and finally, whether Mr. Cambronne actually told Mr. Thompson to "notify all of his vendors and tell them" that he was "shutting down the project" and "to withhold everything" he "had done up to that point."

Certainly, the testimony sought by the Plaintiffs does not fall within the scope of the "uncontested issue" exclusion contained in Rule 4-3.7(a)(1). Further, such testimony appears to be material and relevant to the allegations contained in Counts 2 and 3 of Foster-Thompson's amended complaint and Mrs. Foster's Counterclaim to the Amended Third-Party Complaint.[12]

The Court recognizes that subdivision (a)(4) requires a balancing between the interests of the client and those of the opposing party. "Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses." See Comment, Rule 4-3.7, Florida Rules of Professional Conduct. Subdivision (a)(4) provides an exception for a lawyer to act as an advocate at a trial in which the lawyer is also a witness if the disqualification of the lawyer would work substantial hardship on the client. See Rule 4-3.7(a)(4), Florida Rules of Professional Conduct. "Disqualification of an attorney is an extraordinary remedy to be resorted to only sparingly."

---

[12] Likewise, testimony by Walter H. Foster, IV, Esq., in house counsel for Foster-Thompson, LLC, may be material and relevant to the allegations contained in the pleadings. In the event his testimony was sought by the parties at trial Mr. Foster would similarly be disqualified from acting as an advocate at trial on behalf of the Plaintiffs.

Fleitman v. McPherson, 691 So. 2d 37, 38 (Fla. 1st DCA 1997), citing Swensen's Ice Cream Co. V. Voto, Inc., 652 So. 2d 961 (Fla. 4th DCA 1995).  "Nevertheless, when it is shown that the attorney will be an indispensable witness or when the attorney becomes a 'central figure' in the case, disqualification is appropriate."  Fleitman, 691 So. 2d at 38, citing Ray v. Stuckey, 491 So. 2d 1211, 1214 (Fla. 1st DCA 1986).  It appears to this Court that Mr. Cambronne is an indispensable witness as to the activities and intentions of Mr. Thompson during the week of July 19, 2004 and that Mr. Cambronne will most probably become an important witness at the trial.

Contrary to Defendant's argument that Rule 4-3.7 does not apply when a lawyer is being called to testify on behalf of the opposing party, the comment in Rule 4-3.7 specifically addresses this hypothetical problem and states:

> For example, if there is likely to be substantial conflict between the testimony of the client and that of the lawyer or a member of the lawyer's firm, the representation is improper. The problem can arise whether the lawyer is called as a witness on behalf of the client or is called by the opposing party.

Additionally, "[I]t is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness."  Comment, Rule 4-3.7, Florida Rules of Professional Conduct. On October 3, 2004, Plaintiffs' attorney sent a letter to Mr. Cambronne's co-counsel stating, " . . . Mr. Thompson's pleading and two of the attachments make it plain that Mr. Cambronne likely will be a material fact witness in this case . . . "[13]  On August 2, 2005, Plaintiffs took the deposition of Mr. Cambronne as a fact witness.  On November 9, 2005, Plaintiffs' attorney

---

[13] Dkt. #107-1, Ex. 1.

sent a second letter stating, "As we move into the final stretch of the lawsuit, you remain on the list of fact witnesses for the trial.  Indeed, having read the transcript of your deposition testimony, it looks like Mr. Thompson plans to call you as a witness as well . . . We will be asking the Court to exclude witnesses at trial, pursuant to Rule 615 . . . I trust you will make arrangements for someone other than you to conduct the trial of this case . . . "[14] Thus, on two separate occasions Mr. Cambronne was notified that he would be a material fact witness at trial, plus his deposition was taken. For these reasons, both parties could have reasonably foreseen that Mr. Cambronne would probably be a witness at trial.

Finally, Defendant's argument that the July 21, 2004 letter from Mr. Cambronne to Mrs. Foster and the July 30, 2004 letter from Mr. Cambronne to the CPA should be excluded under Rule 408 of the Federal Rule of Evidence is unpersuasive.  The letters at issue do not appear to fall under the scope of settlement or compromise negotiations.  Rather, the letters at issue could more appropriately be described as a catalyst for the instigation of the underlying litigation and were sent to numerous third parties by both the Plaintiffs and Defendant.  Accordingly, the findings by the Eleventh and Fifth Circuit Courts of Appeals in Blu-J, Inc. V. Kemper C.P.A. Group, 916 F. 2d 637 (11th Cir. 1190) and in Ramada Development Company v. Raunch, 644 F. 2d 1097 (5th Cir. 1981) are not applicable under the facts of this case.

It is therefore ORDERED AND ADJUDGED that:

---

[14] Dkt. #107-1, Ex. 2.

Plaintiffs' and Third-Party Counterclaim Plaintiff's (1) Rule 615 Motion to Exclude Fact Witnesses, Including Karl Cambronne, and (2) Motion to Disqualify Karl Cambronne From Serving as Trial Counsel for Steven Thompson, and Supporting Memorandum (Dkt. #107-1) are GRANTED.  Karl Cambronne, Esq., is disqualified from serving as trial counsel in this case.

**DONE** and **ORDERED** in Tampa, Florida on February 3, 2006.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2004\04-cv-2128.order exclude and disqualify.frm