## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**FOSTER-THOMPSON, LLC,**

> **Plaintiff/Counterclaim**
> **Defendant,**

**v.**                                         **Case No.: 8:04-CV-2128-T-EAJ**

**STEVEN THOMPSON,**

> **Defendant/Counterclaim**
> **and Third Party Plaintiff,**

**v.**

**FOSTER-THOMPSON, LLC and**
**JOANN Q. FOSTER,**

> **Counterclaim and**
> **Third Party Defendants.**
> _____/

## <u>ORDER</u>

Before the court are **Plaintiff/Third Party Defendant Foster-Thompson, LLC's Renewed Rule 50 Motion for Judgment as a Matter of Law on Its Conversion Claim, and Motion for Additur or New Trial Under Rules 50 and 59 on Issue of Damages on Breach of Duty Claim, and Supporting Memorandum of Law** (Dkt. 327) and **Defendant/Third Party Plaintiff Steven Thompson's Response** (Dkt. 334), **Third Party Defendant/Counterclaimant JoAnn Q. Foster's Rule 50(b) Motion for Judgment as a Matter of Law** (Dkt. 325), **Third Party Defendant/Counterclaimant JoAnn Q. Foster's Rule 59 Motion for New Trial or Amendment of the Judgment** (Dkt. 326), and **Defendant/Third Party Plaintiff Thompson's Response to Foster's Rule 50(b) Motion and Rule 59 Motion** (Dkt. 336).

## I.      Procedural History

Plaintiff/Third Party Defendant, Foster-Thompson, LLC ("Foster-Thompson" or "the Company") and Third Party/Counterclaim Defendant JoAnn Foster ("Foster"), the Company's 51% owner, initiated an action in 2004 alleging claims of fraud, conversion, breach of duty, and tortious interference against Defendant/Third Party Plaintiff Steven Thompson ("Thompson"), who had a 49% membership interest in the Company.    In turn, Thompson filed a third party complaint/counterclaim against Foster-Thompson and Foster for fraud (Count I), conversion (Count II), and breach of fiduciary duties (Count III), including the duty of loyalty and care.  The dispute arises out of statement made to and amongst the Company's owners and officers, statements made to third parties, and the conduct of the Company's business in fulfilling its contract with the Coalition Provisional Authority ("CPA") to construct an electrical power generating plant in Iraq.

The parties tried the case before a jury from April 2, 2007, through April 10, 2007.  At the commencement of the trial, Foster and the Company dropped their claim for tortious interference against Thompson.  Third Party Defendants moved for judgment as a matter of law at the close of the evidence.[1]  The undersigned denied the motions and submitted the case to the jury.  The jury found Thompson liable to Foster-Thompson for breach of his duties of loyalty and care and awarded the Company damages in the amount of $38,000.00.  The jury also rendered a verdict in favor of Thompson for Foster's breach of the duties of  loyalty and care and awarded Thompson damages in the amount of $650,000.00.

---

[1] At the close of all the evidence, the parties agreed to waive oral argument on any Fed. R. Civ. P. 50(a) motions and simply stated the grounds for such motions.  Foster-Thompson and Foster asserted the same grounds for judgment as a matter of law as raised in these renewed motions.

Prior to trial,[2] the court entered summary judgment on (1)Thompson's fraud and conversion claims in favor of Foster; (2) on Thompson's breach of duties (claim brought on behalf of the Company) against Foster; and (3) on Thompson's claims of conversion and breach of fiduciary duty in favor of the Company and Foster because both were derivative claims brought on behalf of the Company.    After Thompson withdrew his fraud count, the also court held that Third Party Defendants were entitled to summary judgment on this count (Dkt. 102).

## II.    Applicable Standards

When considering a motion for judgment as a matter of law under Fed. R. Civ. P. 50(b), the court should draw all inferences in favor of the nonmoving party.  Collado v. United Parcel Serv., Co., 419 F.3d 1143, 1149 (11th Cir. 2005).  Judgment as a matter of law is proper when the non-moving party presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of the cause of action.  Pickett v. Tyson Fresh Meats, Inc., 420 F.3d 1272, 1278 (11th Cir. 2005), cert. denied, 126 S.Ct. 1619 (2006).  Likewise, to defeat a motion for judgment as a matter of law, the nonmoving party must present evidence that would permit a reasonable jury to find in its favor on the claim.  Bogle v. Orange County Bd. of County Comm'r, 162 F.3d 653, 659 (11th Cir. 1998).  In considering a motion for judgment as a matter of law, the court may not weigh the evidence or decide the credibility of the witnesses.  SEC v. Adler, 137 F.3d 1325, 1340 (11th Cir. 1998) (internal citation omitted).  If the court concludes that there is substantial evidence of such quality and weight that reasonable persons exercising impartial judgment might reach different conclusions, the motion should be denied.  Robbins v. Koger

---

[2] These rulings were entered by the Honorable James S. Moody.  On November 7, 2006, the parties consented to proceed before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) (Dkt. 233).

Properties, Inc., 116 F.3d 1441, 1446 (11th Cir. 1997).

When the party with the burden of proof on a claim seeks judgment as a matter of law, courts apply a stricter standard than when the party that does not bear the burden of proof seeks the same relief.  9A Charles Wright & Arthur Miller, Federal Practice & Procedure, § 2535 at 325-29 (2d ed. 1995).  Although a plaintiff's Fed. R. Civ. P. 50 motion "is cast in the same form as when made by a defending party, it requires the judge to test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect."  Mihalchak v. Am. Dredging Co., 266 F.2d 875, 877 (3rd Cir.), cert. denied, 361 U.S. 901 (1959).  Thus, courts rarely grant judgment as a matter of law in favor of the party having the burden of proof.  See EEOC v. Massey Yardley Chrysler Plymouth, Inc., 117 F.3d 1244, 1250 (11th Cir. 1997).

A motion for a new trial may be granted on the grounds that the verdict is against the weight of the evidence, or the damages are excessive, or substantial errors were made in the admission or rejection of evidence.  Weisgram v. Marley Co., 528 U.S. 440, 452 (2000).  Under Fed. R. Civ. P. 59(a), a judge should grant a motion for a new trial when the verdict is against the great – not merely the greater – weight of the evidence.  Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001).

Florida law governs the issue of proof of damages in diversity cases.  McDermott et al. v. Middle E. Carpet Co., 811 F.2d 1422, 1426 (11th Cir. 1987) (proof of damages is substantive law and therefore governed by state law).  Under Florida law, the damages rule must be flexibly applied so as to provide fair compensation under the circumstances of the specific case.  Christopher Adver. Group, Inc. v. R & B Holding Co. Inc., 883 So.2d 867, 871 (Fla. 3rd Dist. Ct. App. 2004) (the law does not contemplate that damages must be calculated with mathematical exactness).  Moreover,

4

the uncertainty of damages alone does not preclude recovery.  G.M. Brod & Co., Inc. v. U.S. Home

Corp., 759 F.2d 1526, 1538 (11th Cir. 1985).  Proof of damages may be indirect and based upon

assumptions and estimates, as long as the assumptions rest on adequate data.  Id. at 1539.  A jury's

estimation of damages need only be an approximation.  Id.  Thus, under Florida law, a plaintiff's

proof of damages will be sufficient if it provides some evidence from which the amount of damages

may be satisfactorily ascertained.   See Ritchie v. Harrison, No. 3:03-cv-14-1 (CAR), 2006 U.S.

Dist. LEXIS 21171, at *9-10 (M.D. Ga. Mar. 28, 2006).

       Under Florida law, if the court finds a damages award inadequate, additur is required.  Fla.

Stat. § 768.74.  However, federal courts are constrained by the Seventh Amendment of the United

States Constitution from granting a motion for additur, at least where the amount of damages is in

dispute.  See Hawkes v. Ayers, 537 F.2d 836, 837 (5th Cir. 1976)[3].  With plaintiff's consent, a

district court may direct a remittitur of the amount awarded by the jury.  Johansen v. Combustion

Eng'g, Inc., 170 F.3d 1320, 1328-1329 (11th Cir.), cert. denied, 528 U.S. 931 (1999).  The standard

for determining the appropriateness of an award is whether it exceeds the amount established by the

evidence.  Goldstein v. Manhattan Indus., Inc., 758 F.2d 1435, 1448 (11th Cir.), cert. denied, 474

U.S. 1005 (1985)  Where there is sufficient evidence in the record to support the award, a court

should not reduce the jury verdict merely because the court would have reached a different figure.

Johnson v. Barnes & Noble Booksellers, Inc., 03-20488-CIV, 2004 U.S. Dist. LEXIS 25202, at *7

(S.D. Fla. Nov. 8, 2004).  When it is determined that the damages awarded by a jury are excessive

but the finding of liability is supported by the evidence, it is appropriate to order remittitur or a new

---

       [3]  Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding
authority in the Eleventh Circuit.  See Bonner v. City of Prichard, 661 F. 2d 1206, 1209 (11th Cir.
1981) (en banc).

trial limited to the issue of damages.  See Wilson v. Taylor, 733 F.2d 1539, 1549-1550 (11th Cir. 1994), overruled on other grounds, Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989).

### III.   Discussion

####    A.    Foster-Thompson's Motions

In its renewed motion for judgment as a matter of law, Foster-Thompson argues that Thompson admitted to misappropriating the Company's funds and did not offer any evidence at trial to support any defense to the Company's conversion claim.  Additionally, Foster-Thompson requests a new trial on the separate issue of the amount of damages Foster-Thompson incurred due to Thompson's breach of fiduciary duties, or in the alternative, an additur.

The court will address each of Foster-Thompson's arguments in turn.

#####       1.    Motion for Judgment as a Matter of Law Based Upon Thompson Admitting to Every Element of Foster-Thompson's Conversion Claim

The issue is whether the evidence Foster-Thompson highlights in its motion and presented at trial is of such quality and weight that a reasonable jury could not reach a verdict for Thompson on the Company's conversion claim.  Under Florida law, conversion is the knowing and intentional deprivation of money, permanently or for an indefinite period of time, without consent or authorization. Furmanite Am., Inc. v. T.D. Williamson, Inc., No. 6:06-cv-641-Orl-19JGG, 2007 WL 1111254, at * 7 (M.D. Fla. Apr. 11, 2007).

It is undisputed that Thompson withdrew funds totaling $140,410.86 from the Company account between July 16, 2004, and July 31, 2004.  (Foster Tr. Ex. 488, p.6)  The only factual issue is whether Thompson acted without authorization.

The Company relies on Thompson's testimony that Foster expressly revoked his authority to access Company accounts on July 14, 2004, before the so-called project kick-off meeting held in

Amman, Jordan, and his statements that he then proceeded to access Company accounts to withdraw funds he did not intend to repay.  The Company also contends that Thompson's failure to object at the July 14, 2004 meeting waived the provision in the Company's by-laws that required 10 days' notice of any meeting (Dkt. 327 at 8-9).

As further evidence that the Company did not authorize Thompson's withdrawal of the funds at issue, the Company cites a July 20, 2004 letter from Walter Foster, IV, the Company's attorney and Vice President, to Thompson restricting Thompson's access to Company accounts.  (Joint Tr. Ex. 160)  Foster-Thompson also points to Thompson's testimony that on July 21, 2007, Thompson's lawyer wrote a letter to Foster demanding that the Company restore Thompson's authority to withdraw Company funds.  (Trial Transcript, p. 658; Joint Tr. Ex. 171)[4]  Regarding Thompson's position that some of the money he withdrew from the Company during the time period at issue was used to pay legal expenses the Company should incur on his behalf, Foster-Thompson argues that the Company's by-laws and Florida law permit the Company to indemnify a member for legal expenses incurred in defending a lawsuit, not in initiating an attack against the Company.

Thompson attaches to his response portions of his testimony that contradict the Company's allegation that he admitted to converting Company assets.  Thompson testified that he withdrew the Company funds at issue because he still considered himself to be the Company's Treasurer and CEO at the time.  (Trial Transcript, pp. 1139-1140)  Additionally, Thompson explained that his "admission" that Foster revoked his authority to withdraw funds during their meeting on July 14,

---

[4] Specific transcript pages are cited in some portions of the parties' filings but not in others.; thus, this order includes transcript cites where provided by the parties.  Other evidence discussed in this order is supported by the court's review of the transcripts and trial exhibits.

2004, was not an admission that the revocation was actually effective, just that it was attempted.[5] Further, Thompson points out that the Company's July 20, 2004 letter to Thompson stated that it was restricting – not revoking – his access to Company accounts, and that it was as of July 16, 2004, not July 14, 2004.[6]  (Joint Tr. Ex. 160)

Thompson concedes that the Company finally did revoke his authority to write Company checks and remove him as Treasurer on August 2, 2004, under the Action by Consent of Majority of the Members.  (Joint Tr. Ex. 1008)  However, until that date, Thompson contends that the Company's actions were inconsistent and that Foster merely indicated her intent to restrict Thompson's access to Company funds, not revoke it.  Further, according to Thompson, the letter from Thompson's counsel to Foster was not an admission that Foster's actions were effective but instead a demand that she cease interfering with Thompson's day-to-day banking activities (Dkt. 334 at 4-5).  Therefore, Thompson maintains that his testimony and the Company's inconsistent actions create a substantial conflict in the evidence concerning whether Thompson did not have Company consent to withdraw the funds.

The Company argues in the alternative that even if it did not effectively revoke Thompson's day-to-day banking authority in late July 2004, Thompson had the obligation as an officer of the

---

[5]  On direct examination, Foster's attorney asked Thompson, "[n]ow, Mrs. Foster had revoked your authority to access these accounts when she met with you on July 14, hadn't she?" Thompson responded: "Correct."  (Trial Transcript, p. 609)  However, when asked by his own attorney whether he felt he had the authority as the Company's CEO and Treasurer to withdraw funds after the July 14 meeting, Thompson responded: "Yes, I did."  (Trial Transcript, pp. 1139-1140)

[6]  The July 20, 2004 letter stated: "[B]ased on the fiduciary duties and responsibilities of the remaining officers of Foster-Thompson, LLC, . . . your access to all corporate accounts has been restricted."  (Joint Tr. Ex. 160, p. 1)

Company to hold Company funds as trustee for the Company and to refrain from using the money to cover personal expenses (Dkt. 327 at 10).  Thompson admitted that some of the funds he withdrew were for personal use. (Trial Transcript, p. 1141)  However, Thompson also testified that it was not unusual for him to use his personal credit card for Company purposes and then reimburse himself at the end of the month.  (Trial Transcript, pp. 1140-1142)  He testified that Foster knew about this practice.  As for the travel expenses, Thompson cites evidence that travel expenses to and from the Middle East were considered Company expenses, not personal expenses.[7]  (Foster's Tr. Ex. 488)

Nevertheless, there is evidence that some of the Company's documents purporting to remove Thompson from his position as CEO and Treasurer and purporting to revoke his banking access as of July 14, 2004, were drafted after the litigation commenced.  Thompson also testified that he fled to the United States after July 14 not because he was fired but because he was in shock.[8]

Thompson's testimony that Foster had revoked his banking authority on July 14, 2004, was not the admission the Company characterizes it as.  Instead, given this court's standard of review, the jury could have reasonably believed that Thompson withdrew Company funds after this date because he still believed he was CEO and Treasurer and because he wanted to make sure the Company's suppliers were paid for work already performed.  Although Thompson admitted that some of the money he withdrew from the Company was for personal use, he also testified that the

---

[7] Thompson also argues, in a conclusory fashion, that there was substantial evidence allowing the jury to conclude that Thompson's use of Company funds for legal fees was permitted under the Company's by-laws (Dkt. 334 at 8).

[8] However, the Company references Thompson's testimony that he returned to the United States immediately following the July 14 meeting because he believed his role in the project had ended permanently.  (Trial Transcript, p. 546)

amounts he withdrew were to cover Company-related expenses he felt he was entitled to pay.  (Trial Transcript, pp. 1137-1144) Despite his testimony that Foster revoked his banking authority, a reasonable jury could find that Thompson's behavior in withdrawing the funds, coupled with his testimony that he was still acting as Treasurer and CEO, among other things, evidenced his belief that his actions were not unauthorized by the Company.

Foster-Thompson emphasizes both Thompson's trial testimony and the parties' documentary exhibits as a basis for overturning the jury's verdict; however, if there is conflicting testimony on a material issue, the court may not grant judgment as a matter of law.  See Ledbetter v. Goodyear Tire & Rubber Co., Inc., 421 F.3d 1169, 1177 (11th Cir. 2005), aff'd, 2007 WL 1528298 (U.S. May 29, 2007) (No. 05-1074).  In his response, Thompson points to evidence, including portions of his testimony, that contradicts Foster-Thompson's position that it revoked Thompson's banking authority prior to his withdrawal of Company funds and that Thompson was not permitted to withdraw Company funds for personal use.

Whether Thompson's testimony is credible on this issue is for the jury, not the court, to decide.  SEC v. Adler, 137 F.3d at 1340.  If the evidence is conflicting on an issue, the court is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because a judge feels that other results are more reasonable. Tennant v. Peoria & P.U. Ry. Co., 321 U.S. 29, 35 (1944).  The evidence highlighted by Foster-Thompson in its motion and presented at trial does not constitute evidence of such quality and weight that a reasonable jury could not find for Thompson on the Company's conversion claim. This is not one of those unusual cases requiring entry of judgment in favor of a party which did not prevail on its claim at trial.

Thus, drawing all inferences in favor of Thompson, there is sufficient evidence to justify the jury's verdict on the Company's conversion claim.  Foster-Thompson's Fed. R. Civ. P. 50 motion for judgment as a matter of law is denied.

> 2.  Motion for New Trial or Additur on Issue of Damages for Thompson's Breach of Duties Owed to the Company

Foster-Thompson argues that the $38,000.00 the jury awarded to the Company as damages for Thompson's breach of duties is unsupported by the evidence.  Foster-Thompson contends that the basis of the jury's verdict was a string of admissions Thompson made regarding actions he took to harm the Company.  Foster-Thompson submits that it established non-delay damages of at least $152,610.86 and that Thompson did not offer evidence to rebut this amount (Dkt. 327 at 14).  Concerning the over $2 million in delay damages the Company purportedly incurred, Foster-Thompson acknowledges that the jury could have rejected some of these based on evidence Thompson elicited at trial.  However, Foster-Thompson maintains that Thompson did not rebut evidence of at least four months and one week of project delay damages equaling no less than $791,990.00 (Id. at 15-18).  Foster-Thompson argues that the jury, once it finds liability, cannot ignore uncontroverted damages evidence.

In response, Thompson contends that the jury did not find Thompson liable to the Company for breach of his duties due any alleged campaign to sabotage the Company after the July 14, 2004 meeting (Dkt. 334 at 9).  Thompson suggests that the jury instead found that he breached his duties to the Company when he (1) did not provide the Company with engineering drawings after paying engineers $19,721.25 for producing them and (2) did not submit to the Company an itemization of his personal credit card charges, totaling $18,181.72, that he paid off with Company funds.

As Thompson points out, these figures total roughly $38,000.00.  Accordingly, there is a

11

sufficient evidentiary basis for the jury's damages award against Thompson for his breach of duties; the award is not against the great weight of the evidence, and Foster-Thompson's request for a new trial under Fed. R. Civ. P. 59 is denied.

Finally, additur is inappropriate in this case.  For the reasons stated above, the jury award is not inadequate.  Further, as previously stated, federal courts are constrained by the United States Constitution from awarding additur without the consent of both parties.  Thompson opposes the Company's request for additur; it is therefore denied.

B.    Jo Ann Foster's Motions

In her renewed motion for judgment as a matter of law, Foster argues that:  (1) the jury verdict on Thompson's claim for breach of duty of loyalty and care is contrary to the court's summary judgment decision; and (2) Thompson failed to prove all the elements of his claim for breach of duty of loyalty and care against Foster (Dkt. 325 at 1-2).   Foster also requests that a judgment as a matter of law be entered in her favor on her claim for breach of duty of loyalty and care against Thompson because the evidence was overwhelmingly in her favor.

In the alternative, Foster requests a new trial because: (1) the jury verdict was against the weight of the evidence; and (2) damages of $650,000.00 is excessive and unsupported by the evidence.  Foster asserts that, if a new trial is not granted, the court should exercise its power to substantially remit the damages award.   The court will address each of these contentions in turn.

1.    Motion for Judgment as a Matter of Law on Thompson's Claim for Breach of Duty of Loyalty and Care

The issue raised by Foster is whether Thompson presented legally sufficient evidence at trial for a reasonable jury to find that he was entitled to damages for Foster's breach of duty of loyalty and care.  Foster has the burden of proving that the evidence presented by Thompson weighed so

overwhelmingly in favor of Foster that a reasonable jury could not arrive at a contrary verdict.

       a.      Whether the Court's Summary Judgment Order Precludes Thompson's Recovery

Foster contends that Thompson's breach of duty claim is simply a re-casting of Thompson's conversion claim which the district judge dismissed on summary judgment because the allegation that the Company's assets were "looted" is the nature of a derivative claim, not an individual claim.[9]  It is true that the law of the case prevents Thompson from seeking damages based upon his conversion claim.  See Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1313 (11th Cir. 2000) (under the law-of-the-case doctrine, the resolution of an issue decided at one stage of a case is binding at later

---

[9]  The decision provided in pertinent part:

> The Third Party Defendants have moved for summary judgment on the grounds that [Count] II is a derivative claim asserted on behalf of the LLC and that Thompson has failed to make a demand to obtain action by the managing member of the LLC as required by § 608.601(2), Fla. Stat. (2004).  The Third Party Defendants also assert that Thompson has failed to satisfy the common law conversion requirement of demanding the return of the converted asserts.  Thompson does not deny that he had failed to satisfy the requirements of § 608.601(2).  Rather, Thompson argues that he is making a direct claim for conversion of his own assets.

> The court disagrees with Thompson's assertion.  Thompson's own response to the motion for summary judgment notes that the Third Party Defendants attempted to convert the "assets and corporate opportunities of Foster-Thompson, LLC." (footnote omitted) It is apparent that Thompson is seeking to recover assets of the LLC.  Thompson's appropriate course of action would be to file a derivative action to seek to have the allegedly looted assets placed back into the LLC and to move to dissolve the LLC pursuant to §§ 608.441 and 608.449, Fla. Stat. (2004).  Accordingly, summary judgment is granted on Count II.

(Dkt. 102).

stages of the same case).  However, the court finds that Thompson's claim for breach of duty of loyalty and care is a distinct and separate cause of action from Thompson's conversion claim.

Pursuant to the Florida Limited Liability Company Act, each manager and managing member owes a duty of loyalty and a duty of care to all members of the limited liability company ("LLC"). Fla. Stat. § 608.4225(1); In re Grosman, No. 6:05-bk-10450-KSJ, 2007 Bankr. LEXIS 1884, at *49 (Bankr. M.D. Fla. May 22, 2007) (a managing member of LLC owes fiduciary duties of loyalty and care to LLC and all members of the LLC).   A manager or a managing member is not personally liable to the LLC or its members for "any statement, vote, decision, or failure to act regarding management or policy decisions by a manager or a managing member."  Fla. Stat. § 608.4228(1). There are exceptions, however:  if a manager or managing member violates a criminal law, receives an improper personal benefit, consciously disregards the best interests of the LLC or commits willful misconduct, he or she may be personally liable.  Fla. Stat. § 608.4228(1)(b).  The plain language of the statute does not allow a LLC operating agreement to eliminate a duty of loyalty or to unreasonably reduce the duty of care.  Fla. Stat. § 608.423(2).

Under Florida law, a member of a LLC may bring a breach of fiduciary duty claim for money damages against another member or managing member for wrongfully retaining revenues and profits of the LLC.  Merovich v. Huzenman, 911 So.2d 125, 128 (Fla. 3rd Dist. Ct. App. 2005).[10]

---

[10]  In Merovich, the court held that the members' claim that the managers had wrongfully retained revenues and profits of the LLC was incorrectly dismissed because Fla. Stat. § 608.4225 might support a breach of fiduciary duty against the individual managers if appropriately pled. 911 So.2d at 128.  Other courts have held that, in a breach of duty of loyalty case, if one member misappropriates LLC funds, the other has a right to bring a direct claim.  See Arifin v. Schude, No. 98-C-1591, 1999 U.S. Dist. LEXIS 7926, at *11-13 (N.D. Ill. May 14, 2000); Orsi v. Sunshine Art Studios, Inc., 874 F.Supp. 471, 475 (D. Mass. 1995); cf. Loyola Fed. Sav. Bank v. Fickling, 58 F.3d 603, 608 (11th Cir. 1995) (limited partner entitled to bring direct action for share of fee paid to general partner in breach of duty of loyalty case).  Courts have also recognized that members of an

14

Here, Thompson contends his claim is based on Foster's "wrongful conduct and breaches of duties that she owed to Thompson." (Dkt. 336 at 4). At trial, Thompson argued that Foster's duty of loyalty and care prohibited Foster from forming and working for the benefit of another company, the Foster Group, LLC (the "Foster Group"). In particular, Thompson alleges that Foster, by working for the Foster Group, wrongfully appropriated large sums of money from the bank accounts of the Company. Thompson further argues that Foster's use of Company funds and staff to promote the Foster Group was conduct adverse to the Company's interests.

As the President and a managing member of Foster-Thompson, Foster owed Thompson the specific duties delineated in Fla. Stat. § 608.4225. There is no argument that the Company's operating agreement limited or narrowed the members' duties of loyalty and care to each other. Consequently, Thompson's allegations that Foster wrongfully expended and retained LLC funds for personal use or to promote the interests of the Foster Group are sufficient to support Thompson's direct claim for breach of fiduciary duty of loyalty and care. Thus, because Thompson's breach of duty claim is separate from any derivative claim based upon a theory of conversion, the law of the case does not preclude Thompson from seeking damages based upon Foster's breach of duty of loyalty and care.

---

LLC are directly injured by the misappropriation of funds, usurpation of business opportunities, or other willful misconduct by another member of the LLC. See generally Goldstein & Price, L.C. v. Tonkin & Mondl, L.C., 974 S.W.2d 543, 552 (Mo. Ct. App. 1998) (wrongful withdrawal of funds by manager of LLC would have immediate and direct effect on the injured member's capital); Lawson v. Tax Lien Res. Group, LLC, 1998 WL 957331 (N.D. Ill. Dec. 15, 1998) (former LLC member allowed to directly sue her former co-members alleging that they had wrongfully withheld her share of profits and other compensation).

b.      Whether There is Sufficient Evidence to Support the Jury's Finding of Liability on Thompson's Claim for Breach of Duty of Loyalty and Care

Foster argues she is entitled to a judgment as a matter of law because Thompson failed to prove all the elements of his claim for breach of duty of loyalty and care and no reasonable jury would find that Foster breached her duty.[11]   Foster asserts that Thompson failed to present any evidence that Foster diverted business away from Foster-Thompson to her new company, the Foster Group, or that she improperly used Company money for her personal use.   Foster heavily relies on her testimony to prove that the Foster Group never had any business, she never requested a novation to the Iraqi contract, and she repaid all money borrowed from Foster-Thompson (Dkt. 325 at 5-7). Foster also cites to the testimony of Lt. Col. Karen Maskew ("Maskew") as proof that Foster never attempted to divert the Iraqi contract to the Foster Group (Dkt. 325 at 6).   Moreover, Foster contends that because the jury found that Thompson breached his duty of loyalty and care to the Company, no reasonable jury could find in favor of Thompson on his breach of duty claim against Foster.

Even assuming a reasonable jury could find that Foster breached her duty of loyalty and care, Foster contends that she proved every element of her affirmative estoppel defense.  Foster maintains

_____

[11]   The court instructed the jury that the duty of loyalty and care imposes a duty to: (1) account for and hold as trustee any property, profit, or benefit derived in the conduct of the LLC or derived from the use of LLC property; (2) refrain from dealing with the company on behalf of a party having an interest adverse to the company; (3) refrain from competing with the company in the conduct of company business before the dissolution of the company; and (4) refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law.  The instructions noted that the duty of loyalty and care is not violated merely because the member's conduct furthers the member's own interest.  Additionally, the court instructed the jury on the elements of the estoppel affirmative defense.  The jury instructions provided that the elements of estoppel are: (1) words, admissions, conduct, acts and acquiescence causing another person to believe in the existence of a certain state of things; (2) the person speaking, admitting, acting or acquiescing does not willfully, culpably or negligently; (3) the other person is induced to act and change his or her previous position to his or her own detriment.

that she should have prevailed on her defense of estoppel because Thompson had no authority to withdraw funds from the Company account after July 14, 2004, and Thompson conducted a campaign to sabotage the Iraqi contract by sending harmful emails to suppliers and government officials.

In response, Thompson cites evidence that Foster used Foster-Thompson funds for her own personal use and to promote her new company, the Foster Group.  He argues that Thompson Tr. Ex. 1004 demonstrated that Foster used Company funds for personal use and to attend a procurement conference in Jordan to promote the Foster Group.[12]  Thompson further asserts that he presented evidence to contradict Foster's testimony that she never attempted to divert the Iraqi contract to the Foster Group.  Specifically, Thompson cites to Joint Tr. Exs. 1051 and 1075 as examples of the Foster Group's search for engineers, technicians and consultants to work on the Iraqi power plant contract. Thompson also cites Thompson Tr. Ex. 1079 as evidence that Foster improperly advertised the Iraqi contract as a Foster Group project.  Thompson points out that Maskew's testimony simply proves that Maskew and Foster never had discussions regarding a novation, successor in interest, or name change concerning the Iraqi contract.

Additionally, Thompson argues that his conduct did not give rise to the application of estoppel as a matter of law.  As discussed above, the jury found Thompson liable to the Company in the amount of $38,000.00 on the breach of duty claim.  However, Thompson emphasizes that the jury did not conclude that he lacked the authority to withdraw funds from the Company account after July 14, 2004; otherwise, Thompson contends, the award in favor of the Company would have been much greater because he withdrew more than $38,000.00 from the Company account after July 14, 2004.

---

[12]   Thompson Tr. Ex. 1004 is a profit summary for Foster-Thompson constructed by Thompson from ledgers created by Foster (Dkt. 268 at 1).

(See supra, pp. 11-12)  Thompson also disputes the accusation that he sabotaged the Iraqi contract. Thompson contends he was concerned about unpaid vendors after his July 14, 2004 meeting with Foster and that his abrupt exclusion from the project prompted him to send the emails.

The court rejects Foster's argument that no reasonable jury could find in favor of Thompson on his breach of duty claim against her because the jury found that Thompson breached his duty to the Company.  As discussed above, a claim against a LLC for breach of duty of loyalty and care is distinct and separate from a breach of duty claim against a member or managing member.

Thompson presented evidence contradicting Foster's testimony about the diversion of funds and business opportunities and the motivation for Thompson's emails to suppliers and officials on the Iraqi project.  The evidence highlighted by Foster in its motion and presented at trial does not constitute evidence of such quality and weight that a reasonable jury could not reach a verdict for Thompson.  As a basis for overturning the jury's verdict, Foster highlights her own testimony.  The jury could have disregarded Foster's testimony and reasonably found based on other evidence that Foster breached her duty of loyalty and care to Thompson and that Foster failed to prove her defense of estoppel by a preponderance of the evidence.[13]  Thus, viewing the entire record in the light most favorable to Thompson, the court holds that there was substantial evidence that would permit an impartial juror to conclude that Foster breached her duty of loyalty and care to Thompson.

---

[13] If the evidence is conflicting on an issue, the court is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because a judge feels that other results are more reasonable.  Tennant, 321 U.S. at 35.

        c.       <u>Whether There is Sufficient Evidence to Support Jury's Award of Damages on Thompson's Claim for Breach of Duty of Loyalty and Care and Whether the Court Should Grant a New Trial</u>

Foster seeks a new trial because, she argues, the jury verdict was against the weight of the evidence and the damage award of $650,000.00 is excessive and unsupported by the evidence.  (Dkt. 362)   In her motion for new trial, Foster reiterates many of the same arguments and evidence set forth in her motion for judgment as a matter of law.[14]   The court finds it unwarranted to grant a new trial on liability grounds.  The verdict against Foster on liability is not against the great weight of the evidence.  However, a new trial on damages is required.

Foster contends that the sole evidence to support the jury's damage award of $650,000.00 is the statement of Thompson's counsel during closing argument:

> We are asking you today for $650,000, which is one half of the amount of money that JoAnn Foster took out of Foster-Thompson to pay Foster Group.

Foster argues that because Thompson's counsel mentioned no other evidence in his final argument, counsel's statement was the basis for the jury's verdict on this claim.  The court agrees.  Given the lack of an evidentiary predicate for counsel's request to the jury, it is likely the basis for the damages award.

There is inadequate evidence in the record to demonstrate that Foster's breach of duty was the proximate cause of $650,000.00 in damages to Thompson.  At most, there was self-serving

---

[14]   Foster contends an additional basis for a new trial on liability is Thompson's admission that he accepted a kickback of $25,000.00 from Donald Barry ("Barry") (Dkt. 326 at 12-13). However, Thompson denied asking Barry for a kickback on the Iraqi contract. He admitted asking Barry for a kickback on a contract he worked on with his former employer, Wunderlick-Malec. The jury was apparently unpersuaded to reject Thompson's testimony altogether based on the kickback evidence.

testimony by Thompson and speculation on Thompson's part as to damages he suffered.  In opposing the motion for new trial, Thompson fails to demonstrate a nexus between Foster's conduct and Thompson's damages as a member of the Company, as opposed to the Company's losses, and the $650,000.00 damages award.  Although proof of damages may rest upon assumptions and estimates, the jury could not approximate the amount of damages sustained by Thompson based upon the inadequate data presented at trial.  In fact, Thompson's counsel concedes that his suggestion during closing argument to award Thompson $650,000.00 "was calculated to inspire poetic justice." (Dkt 336 at 4).  Based on the present record, it appears that the jury's damages award was based primarily, if not wholly, on the statement by Thompson's counsel during closing argument.  See, e.g., McInnis v. Town of Weston, 458 F. Supp. 2d 7, 19 (D. Conn. 2006); Virgin Island Maritime Serv. v. Puerto Rico Maritime Shipping, 978 F. Supp. 637, 649 (D. V.I. 1997).  The amount of the damages award is against the great weight of the evidence.

A motion for new trial on the issue of damages, once liability is established, is entirely proper. See Edwards v. Sears, Roebuck and Co., 512 F.2d 276, 282 (5th Cir. 1975); Vidrine v. Kansas City S.R. Co., 466 F.2d 1217, 1226 (5th Cir. 1972).  Accordingly, the jury verdict of $650,000.00 is vacated because it is against the great weight of the evidence.  A new trial shall be conducted on the issue of damages for Thompson's  breach of duty claim against Foster.   Because a new trial is warranted, it is unnecessary to address Foster's alternate request for remittitur.

> 2.   Motion for Judgment as a Matter of Law Based Upon Foster's Claim of Breach of Loyalty and Care

Foster claims she is entitled to judgment as a matter of law on her claim for Thompson's breach of duty of loyalty and care and requests a new trial on the issue of her damages for Thompson's breach.

20

First, Foster contends that Thompson admitted to every element of Foster's claim.   Foster argues that she presented undisputed evidence that Thompson wrongfully withdrew funds from Foster-Thompson's bank account after his authority to do so was revoked.  Joint Tr. Ex. 160 is a July 20, 2004 letter from the Company's attorney to Thompson restricting Thompson's access to the Company accounts.   According to Foster, this exhibit and Foster's testimony are evidence that Thompson's authority to access the Foster-Thompson bank account was revoked on July 14, 2004. Foster  further contends that Thompson admitted that he withdrew funds from the account after his authority was revoked.  Second, Foster asserts that Thompson breached his duty of loyalty and care by sending dozens of emails to government agencies and suppliers as part of his plan to sabotage Foster-Thompson.   Finally, Foster notes the jury found that Thompson breached the duty of loyalty and care owed to Foster-Thompson. Foster contends a reasonable jury, relying on the same evidence, should have found that Thompson similarly breached the duty of loyalty and care owed to Foster.[15]

Thompson disputes that he admitted every element of Foster's claim.  Although Thompson answered affirmatively that Foster had revoked his authority to withdraw funds, Thompson maintains that he never admitted that Foster's revocation had any force or effect.   As discussed above, Thompson testified that he withdrew Company funds after the July 14, 2004 meeting because he still considered himself to be the Company's Treasurer and CEO at the time.   (See supra, pp. 11-12) Moreover, given Foster's statements during a July 14, 2004 meeting, Thompson asserts his actions in sending emails to various businesses and officials were justified.

Applying the standard for a motion for judgment as a matter of law, especially where the

---

[15]   However, the Company recovered $38,000 on its breach of duties claim against Thompson; some of this amount may have been demanded by Foster.

moving party had the burden of proof at trial, the jury's verdict in favor of Thompson on Foster's breach of duty claim should stand. The evidence presented by Foster is not so overwhelming that a reasonable jury could not have arrived at a contrary verdict. Therefore, Foster's Renewed Motion for Judgment as a Matter of Law is denied.

**IV.    Conclusion**

Upon consideration, it is **ORDERED AND ADJUDGED** that:

(1)    **Plaintiff/Third Party Defendant Foster-Thompson, LLC's Renewed Rule 50 Motion for Judgment as a Matter of Law on Its Conversion Claim, and Motion for Additur or New Trial Under Rules 50 and 59 on Issue of Damages on Breach of Duty Claim** (Dkt. 327) is **DENIED;**

(2)    **Third Party Defendant/Counterclaimant JoAnn Q. Foster's Rule 50(b) Motion for Judgment as a Matter of Law** (Dkt. 325) is **DENIED**; and

(3)    **Third Party Defendant/Counterclaimant JoAnn Q. Foster's Rule 59 Motion for New Trial or Amendment of the Judgment** (Dkt. 326) is **GRANTED** to the extent that Foster is granted a new trial on the issue of damages on the breach of duty claim brought by Thompson. It is otherwise denied.

(4)    The Clerk is directed to enter an amended judgment in accordance with the foregoing.

 **DONE AND ORDERED** in Tampa, Florida on this 14th day of June, 2007.

ELIZABETH A JENKINS
United States Magistrate Judge